Carrie LeRoy (SBN #209706)
17774 Old Summit Rd.
Los Gatos, CA 95033
Telephone: (650) 630-4379
Email: carrie.leroy@aol.com

Pro Bono Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD JOSE MONTIEL MORAN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID VENTURELLA, Acting Director of United States Immigration and Customs Enforcement; FERETI SEMAIA, Warden, Adelanto ICE Processing Center; THOMAS GILES, Field Office Director of the Los Angeles Immigration and Customs Enforcement Office in their official capacities,<br>Respondents. | Case No:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**VERIFIED PETITION**<br><br>**PETITIONER'S DHS NO:**<br><br>**A # 244326299** |

"The freedom to live fearlessly, the opportunity of liberty, and the American dream. That is all Plaintiffs seek. Instead, they are told to atone for their race, leave because of their names, and purify their blood. The Court disagrees."[1]
– The Honorable Trina L. Thompson

"[I]f the APA's mandate of genuine, non-arbitrary decision-making means anything, it surely means that an agency cannot openly express stereotype-based animus toward a group of immigrants from certain countries and a predetermined intent to sweep away their protections, and then expect a court to blindly accept a post hoc rationalization that its decision was actually the product of a technical administrative concern. We as the judiciary should not pretend to be blind to what the American public can easily observe for themselves."[2]
– The Honorable Salvador Mendoza, Jr.

## INTRODUCTION

1. In violation of the U.S. Constitution, the Immigration and Nationality Act ("INA") and its implementing regulations, and the Administrative Procedure Act ("APA"), Richard Jose Montiel Moran ("Petitioner") is being unlawfully detained by Respondents at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center ("Adelanto"). Petitioner respectfully seeks a writ of habeas corpus requiring Respondents to release him immediately from detention and prohibiting his re-arrest without notice of the basis of the impending revocation of his parole and a pre-deprivation hearing to contest such arrest before a neutral decision-maker. In addition, to preserve this Court's jurisdiction,

---

[1] *National TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1115 (N.D. Cal. 2025) (granting motion to postpone date of agency action terminating temporary protected status).
[2] *National TPS All. v. Noem*, 166 F.4th 739, 753 (9th Cir. 2026), *rehearing en banc denied*, 169 F.4th 796 (9th Cir. 2026) (Mendoza, S., concurring).

Petitioner requests that this Court enjoin Respondents from transferring him outside of the District or deporting him for the duration of these habeas proceedings.[3]

2. Petitioner is just one more casualty of the current administration's war on the constitutional rights of noncitizens in the furtherance of mass deportation goals. As a previously paroled refugee, with no warrant for his arrest and with no changed circumstances to justify his re-detention on August 7, 2026, Petitioner's current detention is unlawful. LeRoy Decl. ¶¶ 7, 11, 13-15. He was afforded no due process protections whatsoever prior to his arbitrary re-arrest and re-detention. LeRoy Decl. ¶¶ 11, 15.

3. All individuals within the United States have constitutional rights. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner, who ICE agents arbitrarily re-arrested while reporting for a job, has deep ties to his community in the United States and is not a flight risk. LeRoy Decl. ¶¶ 6, 7, 11, 13-16.

4. To the contrary, for almost three years, Petitioner reports that he complied with the conditions of his parole, including complying with all

[3] Facts asserted in this Petition for Writ of Habeas Corpus are drawn from the attached Declaration of Carrie LeRoy, counsel for Petitioner, and from exhibits to that declaration. Further citation will be made directly to the individual exhibits attached to the declaration, or to the declaration itself, hereinafter "LeRoy Decl."

immigration law obligations and all other DHS and ICE requirements applicable to him. LeRoy Decl. ¶¶ 5-9, 13-15.

5. Petitioner is actively pursuing his statutory remedies. He has timely filed an Application for Asylum and for Withholding of Removal. LeRoy Decl. ¶ 8.

6. Petitioner's summary, unlawful re-arrest and indefinite re-detention flout the Constitution. The only legitimate interests that civil immigration detention serves are mitigating flight risk and preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Petitioner without a pre-deprivation bond hearing or making any affirmative showing of material changed circumstances, or providing any notice or individualized reasons for his parole revocation required by the implementing regulations of 8 U.S.C. § 1226 and 8 U.S.C. § 1225, Respondents violated Petitioner's procedural due process and statutory rights.

7. At the very least, prior to his re-detention on August 7, 2023, Petitioner was constitutionally entitled to (1) a hearing before a neutral decision-maker prior to that date at which the government should have justified his re-detention or been ordered to release him, and (2) individualized written notice prior to his parole revocation. Instead, Petitioner has been arbitrarily detained at Adelanto since August 7, 2026, without reasonable suspicion, changed

circumstances, a warrant or any due process protections whatsoever. LeRoy Decl. ¶¶ 6-7, 11, 13-15.

8. As a result of his unlawful re-arrest and re-detention, Petitioner is suffering irreparable and ongoing harm, particularly with respect to his inability to support his family members. LeRoy Decl. ¶ 17. Petitioner has been separated from his family, friends, and community, and is experiencing extreme emotional distress resulting from his detention. *Id*.

9. If Respondents may simply re-detain a noncitizen without notice or cause, Respondents would be incentivized to trample on the due process, Fourth Amendment and statutory rights of all paroled non-citizens in order to meet their deportation quotas. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be immediately released from his unlawful detention.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), Article I, § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), the Fourth and Fifth Amendments to the U.S. Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

11. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973). Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because: (1) Respondents are employees, officers, and agencies of the United States, and (2) a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## REQUIREMENTS OF 28 U.S.C. § 2243

12. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

13. Petitioner is a law-abiding refugee from Venezuela who is seeking asylum in the United States after crossing the border on or around December 27, 2023, and being released into the United States on parole to pursue his asylum claim without an obligation to post bond. LeRoy Decl. ¶¶ 5-8.

14. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS"). He is responsible for the implementation and enforcement of the INA and oversees both Customs and Border Patrol. DHS was responsible for Petitioner's first detention and release at the border. Mr. Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

15. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, including the Executive Office for Immigration Review ("EOIR") which operates the immigration court system and the BIA. He is sued in his official capacity.

16. Respondent David Venturella is the Acting Director of ICE, a federal law enforcement agency within the DHS. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Acting Director, Respondent Venturella exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

17. Respondent Thomas Giles is the Director of the Los Angeles ICE Field Office. Under Respondent Giles's authority, ICE agents unlawfully arrested Petitioner and without justification sent him to Adelanto. He is sued in his official capacity.

18. Respondent Fereti Semaia is the Warden of Adelanto, where Petitioner is unlawfully detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## EXHAUSTION

19. Exhaustion should be waived because administrative remedies are futile and Petitioner's continued detention results in irreparable harm. There is no requirement to exhaust administrative remedies because no other forum exists in which Petitioner can raise the claims herein. There is no statutory exhaustion requirement prior to challenging the constitutionality of an arrest or detention or challenging a policy under the Administrative Procedure Act ("APA"). Only an order of this Court could effectively grant Petitioner relief.

20. Prudential exhaustion is not required here because it would be futile, and Petitioner will "suffer irreparable harm if unable to secure immediate judicial consideration of [their] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a

futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted); *Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025).

21. Here, Petitioner has demonstrated grounds for waiving exhaustion. He has been denied his due process rights and has suffered and continues to suffer irreparable harm in the form of the complete loss of his liberty while detained at Adelanto. LeRoy Decl. ¶¶ 11, 17. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Under *Laing v. Ashcroft,* a finding of "irreparable injury" alone is sufficient to conclude that waiver of prudential exhaustion is warranted. *Laing,* 370 F.3d at 1000; *see also Andriasyan v. Warden,* No. 5:26-cv-01361-JAK (Ex), 2026 U.S. Dist. LEXIS 124748, at *16-17 (C.D. Cal. June 1, 2026) (waiving exhaustion under *Laing* to prevent "irreparable injury"); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 2025 WL 2730228, at *4 (S.D. Cal. 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility. Because Petitioners need to show only one of the *Laing* factors applies, ... the Court need not address the other factors."); *Patrick K.K. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-01467-KES-EGC (HC), 2026 U.S. Dist. LEXIS 153055, at *4 (E.D. Cal. July 10, 2026) (waiving exhaustion and explaining that "even if exhaustion were required,

waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating rights under the INA."). Similarly, waiving exhaustion is appropriate here to prevent ongoing irreparable harm to Petitioner and to vindicate his rights under the INA, APA, Fourth Amendment and Due Process Clause.

22. Furthermore, any requirement of exhaustion in immigration court is not appropriate in Petitioner's case because a post-deprivation bond hearing is not the appropriate remedy for the egregious violation of his due process rights. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency"). There is no "extraordinary situation" or valid "governmental interest" to justify Respondents' arbitrary re-arrest and re-detention of Petitioner without individualized notice, cause or a material change of circumstances in violation of his due process rights. In ordering the release of the petitioner in *Hasratyan v. Bondi*, 2026 WL 288909, Case No. 5:26-cv-00210-MCS-ADS (C.D. Cal. Feb. 2, 2026), the court explained:

> [T]he process Petitioner received at his January 2026 bond hearing before the immigration judge was deficient. Any remedy to that deficiency by way of review by the Board of Immigration Appeals is

doubtlessly months away. Accordingly, the post-detention process Petitioner received and will receive is no substitute for the predetention process she was owed. *Id*. at *4.

23. Petitioner is not eligible or required to seek release on bond in immigration court under *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), *reconsideration granted in part*, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *amended and superseded on reconsideration*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *final judgment entered*, 813 F. Supp. 3d 1084 (C.D. Cal. Dec. 18, 2025) ("*Bautista*"). Petitioner is not a member of the bond-eligible *Bautista* class, which consists of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista*, 2025 WL 3288403, at *9.

24. Unlike the bond-eligible class members in *Bautista* who entered the United States without apprehension, Petitioner was previously detained on December 27, 2023, released on parole by immigration officials without finding him to be either a flight risk or a danger to the community. LeRoy Decl. ¶¶ 5-7. *Bautista*, 2025 WL 3713982, at *24-25 (assessing class certification requirements and noting that at the time of their arrest, petitioners were already in the United States, charged as inadmissible, detained, and denied a bond hearing); *see also Xie*

*v. LaRose*, No. 25-03649, 2026 WL 92066, at *2 (S.D. Cal. Jan. 13, 2026) (finding that petitioner was not a *Bautista* class member under similar factual circumstances); *Singh v. Bowen*, No. 5:26-cv-00867-MEMF-MBK, 2026 U.S. Dist. LEXIS 45553, at *8-9 (C.D. Cal. Mar. 3, 2026) (declining to apply *Bautista* to a previously paroled asylum seeker subject to § 1226(a) and ordering his immediate release).

25. Accordingly, there is no exhaustion requirement, and Petitioner properly seeks immediate release to remedy the due process, Fourth Amendment and statutory violations that resulted in his unlawful re-detention on August 7, 2026.

## FACTUAL BACKGROUND

### A. The 2025 DHS Immigration Enforcement Campaign

26. On January 20, 2025, the day that President Trump took office for his second term, he signed Executive Order 14159, "Protecting the American People Against Invasion," the purpose of which was "to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people." Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025). The order directed the Secretary of Homeland Security to take various actions "to ensure the efficient and expedited removal of aliens from the United States." *Id.*

27. Since mid-May 2025, DHS has carried out an aggressive enforcement

campaign targeting noncitizens who are in regular removal proceedings in immigration court, many of whom, like Petitioner, have pending applications for asylum or other relief. This coordinated operation is aimed at dramatically accelerating deportations by making warrantless arrests of noncitizens who happen to be in a certain area and thereafter claiming without a proper basis that they are subject to mandatory, indefinite detention.

28. DHS's aggressive tactics appear to be motivated by the current Administration's imposition of a new daily quota of 3,000 ICE arrests. In part as a result of this campaign, ICE's arrests of noncitizens with no criminal record have increased dramatically since before January 2025.[4]

29. The government's aggressive deportation campaign is also a significant shift from previous DHS practice of re-detaining noncitizens only *after* a material change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137

[4]*See* Rebecca Santana, *ICE, the agency central to Trump's mass deportation plans, undergoes a shakeup*, ASSOCIATED PRESS (May 30, 2025), https://perma.cc/3RL3-Y9ZU ("White House deputy chief of staff Stephen Miller said on Fox News earlier this week that the administration was setting a goal of 3,000 arrests by ICE each day and that the number could go higher."); Ted Hesson & Kristina Cooke, *ICE's Tactics Draw Criticism as it Triples Daily Arrest Targets*, REUTERS, June 10, 2025, https://www.reuters.com/world/us/ices-tactics-draw-criticism-it-triples-daily-arrest-targets-2025-06-10/; Alayna Alvarez & Brittany Gibson, *ICE Ramps Up Immigration Arrests in Courthouses Across the U.S.*, AXIOS, June 12, 2025, https://www.axios.com/2025/06/12/ice-courthouse-arrests-trump; José Olivares & Will Craft, *ICE Arrests of Migrants with No Criminal History Surging under Trump*, THE GUARDIAN, June 14, 2025, https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-trump-figures; Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down,* N.Y. TIMES, July 1, 2026, https://www.nytimes.com/2026/07/01/us/politics/ice-immigrant-arrests-surge.html?smid=url-share (documenting that ICE "has doubled its daily arrest numbers without the fanfare of last year's large urban operations, sowing fear in immigrant communities.").

(9th Cir. 2018) (describing prior practice); *see also Duong v. Kaiser,* 2025 U.S. Dist. LEXIS 185024, at *22 (N.D. Cal., Sept. 19, 2025) (requiring "material change of circumstances" before bond can be revoked or modified (citations omitted)). Petitioner's detention is a direct result of DHS's unlawful enforcement campaign.

### B. Petitioner's Background

30. Petitioner, a Venezuelan citizen who has the full support of his community, has sought asylum in the United States due to a well-founded fear of persecution, including death threats, because of his opposition to gangs and drug smugglers that are uncontrolled by the Venezuelan government. LeRoy Decl. ¶¶ 4, 5, 8, 16.

31. Petitioner fled Venezuela on or about August 18, 2023 to escape death threats and extortion. LeRoy Decl. ¶ 4. Petitioner was a fisherman and, with his brothers, was one of the founders of "Guardians of the Lake," a group formed to help protect fishermen from extortion from criminal groups operating with impunity in Venezuela, including drug traffickers, who were supported by the Venezuelan police. *Id*. Petitioner and his brothers publicly denounced the threats and extortion. *Id*. As a result of their efforts to challenge the criminal groups, two of Petitioner's brothers were murdered. *Id*. Petitioner nevertheless continued to support the Guardians of the Lake while being threatened by the criminal groups who controlled illegal smuggling and extortion. *Id*. Petitioner and his family were

targeted and threatened for denouncing the criminal gangs and their illegal activities. After living in constant fear, Petitioner and his family fled Venezuela and arrived in Mexico. *Id*. Petitioner believes that, were he to return to Venezuela, he would be murdered. *Id*.

32. Wishing to enter the United States legally and to seek asylum, he and his family applied for parole via the "CBP One" mobile application, waiting in Mexico before obtaining an appointment on December 27, 2023. LeRoy Decl. ¶ 5.

33. DHS issued Petitioner a Notice to Appear ("NTA") by a Customs and Patrol Border Officer ("CBP"), which charged him under Section 212 (a)(7)(A)(i)(I) of INA as being "an arriving alien." The NTA instructed him to appear before an immigration judge of the United States Department of Justice at the immigration court at 1100 Commerce Street, Dallas, Texas 75242 on October 1, 2029. Exh. B; LeRoy Decl. ¶ 6-7.

34. On December 27, 2023, Petitioner entered the United States at the San Ysidro Port of Entry, where DHS agents promptly detained him. LeRoy Decl. ¶ 3, 6. After screening and briefly detaining Petitioner, DHS made no finding of flight risk or danger to the community. LeRoy Decl. ¶ 6-7. In granting parole, DHS officials necessarily determined that he posed neither a flight risk nor a danger to others. *See id.* Petitioner reports that he was not required to post bond, wear an ankle monitor, or use any other tracking device as a condition of his parole. *See id.*

35. Thus, CBP granted Petitioner parole into the United States without a requirement that he post bond, wear an electronic monitoring device, or adhere to other similar parole or supervision requirements. LeRoy Decl. ¶ 7. Upon his release, Petitioner began to build a life for himself in the United States and spent time with his large family in the United States, most of whom live in California. *Id.*

36. On November 26, 2024, Petitioner timely submitted an I-589 Application for Asylum and Withholding of Removal based on his fear of being persecuted and killed in Venezuela. LeRoy Decl. ¶ 8. The I-589 was submitted on behalf of his entire family, including his son, Mr. Richard David Montiel Mora, and his wife, Paulina Chiquinquira Mora Rincon and their two other children. *Id.*

37. Petitioner applied for and was granted an Employment Authorization Document ("EAD") on December 3, 2024. Exh. C; LeRoy Decl. ¶ 9.

38. For almost three years, Petitioner reports that he complied with the conditions of his parole, including complying with all immigration law obligations and all other DHS and ICE requirements applicable to him. LeRoy Decl. ¶¶ 7, 13-15.

39. Petitioner has built a promising life for himself in the United States, with strong community ties. Exh. D; LeRoy Decl. ¶ 16. Petitioner has become a valued member of his community in the United States. *See id.* Petitioner reports that he has never been arrested for, charged with or otherwise accused of a crime. LeRoy Decl. ¶ 14. Petitioner has not received any notice from DHS or other

entities suggesting that he has committed any crimes or presented a national security risk or threat to others. *See id.* The record in Petitioner's case demonstrates that he complied with the conditions of his 2023 release. Exh. A; LeRoy Decl. ¶¶ 6-7, 13-15.

**B. Petitioner's Unlawful Re-Arrest**

40. On August 7, 2026, Petitioner arrived at Fort Irwin, California, army base, with his son and others for a scheduled construction job. LeRoy Decl. ¶ 11. Petitioner reports that they were driven to the entrance of the base where the military police told the men to wait in a room, stating "while we just check to make sure you don't have any outstanding traffic tickets." *Id.* Subsequently, ICE agents arrived handcuffed and detained the entire group, including Petitioner and his son. The ICE agents re-arrested Petitioner without a warrant, individualized notice or any explanation for the basis of his re-arrest. *Id.*

41. Prior to his sudden unlawful re-arrest and re-detention, Petitioner lived peacefully and productively in the United States for almost three years, with the express knowledge and consent of the United States government. Exhs. A, C; LeRoy Decl. ¶¶ 6-7, 9.

42. Petitioner was a valued member of his community until he was re-arrested and re-detained by ICE on August 7, 2026, without notice, cause, or an opportunity to contest the basis for his re-detention. LeRoy Decl. ¶¶ 11, 13-15. He was shocked when he was re-detained by ICE agents, was not afforded an

opportunity to contest the basis of the revocation of his parole and was not provided with an individualized notice suggesting that he had become a flight risk or posed a danger to others. LeRoy Decl. ¶ 15.

43. Petitioner is suffering irreparable and ongoing harm while in detention. LeRoy Decl. ¶ 17. Petitioner has been separated from his family (including his young children), friends, and community, and is experiencing extreme emotional distress resulting from his detention. *Id*.

44. Petitioner's re-arrest and re-detention had nothing to do with his individual case, as he is not a flight risk, has no criminal record and is not a threat to others. LeRoy Decl. ¶¶ 13-15. Instead, his re-arrest and re-detention are part of a nationwide DHS strategy of making warrantless arrests of noncitizens such as Petitioner who dutifully and in good faith comply with their obligations under immigration law, such as timely filing an application for asylum. Petitioner's re-detention served only to further Respondents' goal of detaining noncitizens, and seeking to re-route them to fast-track deportations to meet arbitrary deportation quotas.

## LEGAL BACKGROUND

### A. Due Process Violations

45. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is

lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 693). These due process rights are both substantive and procedural.

46. *First*, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

47. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510, 519–20, 527–28, 531 (2003).

48. *Second*, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, “the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.” *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis added). This applies even to cases in which that freedom is lawfully revocable. *See Hurd v. District of Columbia*, 864 F.3d 671, 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

49. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey*, 408 U.S. at 482. As the Supreme Court recognized, “[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.” *Id.* “By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution].” *Id.*

50. This reasoning applies with equal if not greater force to people released from civil immigration detention with no criminal record, like Petitioner. Noncitizens living in the United States like Petitioner have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at

690. Moreover, "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

51. Due process required that Respondents provide Petitioner with notice and a pre-deprivation bond hearing *prior* to revocation of his parole. *See, e.g.*, *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *17 (W.D.N.Y. 2025) ("To mitigate the risk of erroneous deprivation due process requires, at a minimum, the opportunity for Mata Velasquez to submit evidence relevant to whether the government should revoke his parole before it makes a revocation decision"); *Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing") (internal quotation marks omitted); *Y-Z-H-L v. Bostock,* 2025 WL 1898025, at *10-12 (D. Or. July 9, 2025) (explaining the parole process in immigration cases and noting that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision); *see also Guillermo M. R.*, 791 F. Supp. 3d at 1036 ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process.").

52. The weight of authority in the Ninth Circuit holds that parole creates

a liberty interest that does not expire with the summary termination, revocation or expiration of parole without notice or cause. *See Anderson v. Chestnut*, No. 1:26-cv-01960-DAD-CKD, 2026 U.S. Dist. LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("Even though petitioner's parole authorization expired, petitioner maintains his liberty interest in continued release."); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 820 F. Supp. 3d 1106, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.").

#### ***i. Mathews***

53. Once a court has found that a noncitizen has a liberty interest in continued release, the Court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors the Supreme Court described in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez*, 872 F.3d at 993 (applying *Mathews* factors in immigration detention context). Under that test, the court weighs: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Id.*

54. With respect to the first *Mathews* factor, Petitioner has a strong private interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690

(“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.”). Here, Petitioner entered the United States and was released on parole in December 2023 and, for almost three years established strong community ties, building a future for himself in the United States. Exhs C, D; LeRoy Decl. ¶¶ 6-7, 13-16.

55. Respondents’ acquiescence in Petitioner’s continued freedom from custody upon his initial release from custody in December 2023 on parole and failure to lawfully revoke his parole since December 2023 reinforced his liberty interest and his understandable reliance on Respondents’ actions as making it clear that he would remain out of physical custody absent a material change of circumstances. *See Anderson*, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (explaining that “the government’s knowing decision not to detain an individual creates a liberty interest in their continued release” and “[e]ven though petitioner’s parole authorization expired, petitioner maintains his liberty interest in continued release”); *Rocha Ramirez v. Warden*, No. 1:26-CV-02544-DAD-AC, 2026 U.S. Dist. LEXIS 88201, 2026 WL 1078250, at *1 (E.D. Cal. Apr. 21, 2026) (applying *Anderson* to petitioner who entered the United States in 2006 on a valid visa that expired in 2011); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 820 F. Supp. 3d 1106, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (“[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his

liberty interest does not expire along with his parole.") (collecting cases); *Amro Yousry Abdeltawab v. Armant*, No. EDCV 26-01520, 2026 U.S. Dist. LEXIS 87515, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (finding a liberty interest for petitioners who "have never been in immigration custody in the first place due to years of deliberate acquiescence by [the government]"); *Garcia v. Noem*, No. 25-CV-3759-LL-BLM, 2026 U.S. Dist. LEXIS 14094, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026) (explaining the protected liberty interest under the Due Process Clause that noncitizens gain following a period of parole within the United States); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (same). Petitioner has clearly established a liberty interest in his December 2023 release. Thus, the first *Mathews* factor weighs in Petitioner's favor.

56. The second *Mathews* factor, the risk of erroneous deprivation, also weighs in Petitioner's favor. The risk of erroneous deprivation is high when a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention. See *Anderson*, 2026 WL 809990, at *2. Petitioner "was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process."); *see also* 8 C.F.R. § 212.5(e)(2)(i) (requiring written notice of termination of parole); *see also* 8 C.F.R.

§ 287.8(c)(2)(ii) (requiring a warrant for arrest unless the person is likely to escape prior to arrest); 8 C.F.R. § 287.3 (requiring examination of the arrestee and notification of the reason for his or her arrest when a person is arrested without a warrant).

57. Here, when re-arresting Petitioner on August 7, 2026, while he was arriving at the Fort Irwin army base for a construction job, ICE did not show him any warrant or even suggest to him that there was suspicion that he had suddenly become a flight risk or a danger to others. LeRoy Decl. ¶¶ 11, 15.

58. ICE agents arbitrarily re-arrested and re-detained Petitioner without *any* pre-detention process in violation of the INA and its implementing regulations. *See id*. When the government fails to follow its own regulations, fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing, the risk of erroneous deprivation is high. *See Anderson*, 2026 WL 809990, at *2 (noting the high risk of erroneous deprivation when the petitioner did not receive a pre-detention bond hearing); *H.J.G.G. v. Wofford*, No. 1:25-CV-01718-JLT-EPG, 2025 U.S. Dist. LEXIS 267757, 2025 WL 3761803, at *7 (E.D. Cal. Dec. 30, 2025), *report and recommendation adopted*, No. 1:25-cv-01718-JLT-EPG, 2026 WL 320331 (E.D. Cal. Feb. 6, 2026) (noting the importance of a hearing before a person is deprived of their liberty interest). The second *Mathews* factor, the risk of erroneous deprivation, clearly weighs in Petitioner's favor.

59. Finally, while the government has an interest in enforcing its immigration laws, its interest in detaining Petitioner without a pre-deprivation hearing is low. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 U.S. Dist. LEXIS 133521, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As "many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, 2026 WL 288909, at *4.

60. The government released Petitioner from immigration custody in 2023 without an obligation that he post bond, wear an ankle monitor, or satisfy any condition other than appearing when notified. LeRoy Decl. ¶ 7. Noncitizens such as Petitioner are entitled to notice and an opportunity to contest their re-detention *prior* to any re-detention. *See Zinermon*, 494 U.S. at 127. These rights to notice and an opportunity to contest apply even to cases in which that freedom is lawfully revocable. *See Hurd*, 864 F.3d at 683 (D.C. Cir. 2017) (citing *Young*, 520 U.S. at 152 (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing)).

### B. Statutory Violations

61. Petitioner's removal proceedings are governed by Section 240 and his detention is subject to 8 U.S.C. §1226 following his parole expiration date, as he remained at liberty with the permission of the government, including with a

government issued work authorization, without parole revocation. Exh. C; LeRoy Decl. ¶¶ 7, 9; *see also Baptiste v. Bondi*, No. CV 26-02586, 2026 U.S. Dist. LEXIS 130485, at *11-12 (D. Ariz. May 21, 2026) ("The majority of federal district court[s] that have considered circumstances similar to Petitioner's [whose humanitarian parole expired] have found that a person paroled into the United States under § 1182(d)(5)(A), who has committed no crime nor violated the conditions of their parole, is detained under § 1226(a) rather than § 1225(b)"). Pursuant to 8 U.S.C. §1226, the detention of noncitizens is authorized in standard non-expedited removal proceedings before an immigration judge. *See* 8 U.S.C. §1229a. Individuals in §1226(a) detention are entitled to a bond hearing at the outset of their initial detention. *See* 8 C.F.R. §§1003.19(a).

62. The detention provisions at §1226(a) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104--208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226(a) was most recently amended last year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

63. Pursuant to § 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of 8 CFR chapter I and may be served only by those immigration officers listed in §

287.5(e)(3) of 8 CFR chapter I. "[I]f an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance." *J.S.H.M. v. Wofford*, 2025 WL 2938808, at *4 (E.D. Cal. 2025).

64. Similarly, "[w]here the release decision was made by a DHS officer, not an immigration judge, the government's practice has been to require a showing of changed circumstances before re-arrest." *Id.*; *see also Saravia v. Sessions*, 280 F.Supp.3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom., Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("According to government counsel, DHS has incorporated . . . into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer.").

65. Thus, it is well established that in cases of individuals previously released by DHS, re-detention requires an individualized determination of a material change in circumstances relating to flight risk or danger. *See Ortega,* 415 F. Supp. 3d at 968 ("DHS re-arrests individuals only after a 'material' change in circumstances." (citing *Saravia,* 280 F.Supp.3d at 1197))*; see also Matter of Sugay,* 171 I&N Dec. 637, 640 (B.I.A. 1981).

66. The specific permissible grounds for re-detaining an individual under the INA must include a "material change of circumstances." *Duong v. Kaiser,* 2025

U.S. Dist. LEXIS 185024, *22 (N.D. Cal. Sept. 19, 2025); *see also Qazi v. Albarran*, 2025 No. 2:25-cv-02791-TLN-SCR, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in circumstances."); *Yan Lu v. Los Angeles Field Dir., et al.*, No. 5:26-CV-575-JAK-SP, 2026 WL 1455317, at *3 (C.D. Cal. May 7, 2026); *Lesic v. Larose*, No. 25-cv-2746-LL-BJW,2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025); *Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025); *Faizyan v. Casey*, No. 25-02884, 2025 U.S. Dist. LEXIS 225957, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (finding that respondents' summary revocation of petitioner's conditional parole without an opportunity to be heard deprived him of his due process rights). Once a noncitizen has been released, the law prohibits federal agents from re-arresting him merely because he is subject to removal proceedings. Rather, federal agents must be able to present evidence of a materially changed circumstance—namely, evidence that the noncitizen is in fact dangerous, has become a flight risk, or is subject to a final order of removal.

67. Absent a material change in circumstances, the re-detention of noncitizens previously released by DHS pursuant to §1226(a) violates the INA because it does not serve the purpose of the statute. Moreover, because Petitioner complied with the terms and conditions of his 2022 parole, "before Respondents

may increase the conditions or amount of Petitioner's prior OSUP,[5] Respondents must show a material change of circumstances that require the increased conditions or amount." *Yousef v. Mullin*, No. 8:26-cv-01280-AJR, 2026 U.S. Dist. LEXIS 120863, at *12 (C.D. Cal. June 1, 2026).

68. Petitioner was re-arrested and re-detained by ICE when he arrived at the Fort Irwin army base for a construction job without notice, cause, or any procedural protections of any kind. LeRoy Decl. ¶¶ 11, 15. At the time of his re-arrest on August 7, 2026, no warrant was presented to Petitioner and there was no evidence of any "material change of circumstance" since Petitioner was paroled into the U.S. in 2023. *See id*. Petitioner was not arrested through reinstatement of "the original warrant" by the Attorney General (8 U.S.C. § 1226(b)) or by DHS officials in accordance with 8 C.F.R. § 1236.1(c)(9). Although 8 C.F.R. § 1236.1(c)(9), provides that a non-citizen's "release may be revoked at any time" it also states that only certain officials may exercise revocation authority: "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, [and] officer in charge (except foreign)." *See id*. (custody and release procedures).

69. Here, ICE officers summarily revoked Petitioner's parole without notice, cause, rhyme or reason. LeRoy Decl. ¶¶ 11, 13-15. These agents did not include an official with authority to revoke supervision under 8 C.F.R. §

---

[5] "OSUP" means an order of supervision specifying parole conditions issued by ICE.

1236.1(c)(9). *See United States v. Gemmill*, 535 F.2d 1145, 1152 (9th Cir. 1976) (agency officials not explicitly granted authority in regulation lack authority to act).

70. The government's failure to comply with even the limited process required by 8 U.S.C. § 1226 and its implementing regulations (8 C.F.R. § 1236.1(c)(9)) underscores the risk of erroneous deprivation in Petitioner's case.

71. Noncitizens such as Petitioner, who was released from immigration custody in 2023, are entitled to notice and an opportunity to contest their re-detention *prior* to any re-detention. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C. Govt.* 864 F. 3d 671, 683 (D.C. Cir. 2017) (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing).

72. Courts in this District have consistently granted the relief sought by Petitioner upon a finding that the government violated the detained petitioner's due process rights. *See Gu'man v. Janecka*, 26-cv-1583-KES, 2026 WL 966576, at *4, at *9 (C.D. Cal. Apr, 7, 2026) ("District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because 'the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release.'")(quoting

*Ramos-Maldonado v. Semaia*, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, at *6-7 (C.D. Cal. Mar. 18, 2026)); *see also Domingo v. Kaiser*, No. 25-cv-05893, 2025 U.S. Dist. LEXIS 133824, 2025 WL 1940179, at *2, at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025).

73. Because Petitioner was re-detained without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful and he should be ordered immediately released and the parties returned to the status quo prior to the date on which Petitioner's unlawful detention commenced. The Ninth Circuit defines the status quo as "the last uncontested status preceding the lawsuit." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024).

74. Respondents violated Petitioner's rights under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), prohibiting warrantless arrests without reason to believe an individual is a flight risk. When re-arresting Petitioner on August 7, 2026, ICE did not show him a warrant or even suggest to him that there was suspicion that he had become a flight risk. LeRoy Decl. ¶¶ 11, 15. There was no basis whatsoever for Respondents to believe any circumstances had changed, as Petitioner had diligently complied with all U.S. laws, both immigration and otherwise, as well as the conditions of his 2022 parole. LeRoy Decl. ¶¶ 7-9, 13-14.

75. Petitioner's circumstances have not changed since he was initially

paroled into the United States in 2023. LeRoy Decl. ¶¶ 13-14. Absent any basis for a finding that Petitioner had suddenly, on August 7, 2026, become a flight risk or a danger, Respondents' warrantless re-arrest of Petitioner violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

76. On August 7, 2026, ICE officers re-arrested and re-detained Petitioner. LeRoy Decl. ¶¶ 11, 15. They displayed no warrant. *See id.* They offered no explanation. *See id.* There was thus no reasonable suspicion, probable cause, or warrant to justify Petitioner's arrest. *See id.*

77. ICE agents re-arrested Petitioner without notice, cause, or any procedural protections at all. LeRoy Decl. ¶¶ 11, 15. At the time of his re-arrest, there was no evidence of any change of circumstances since Petitioner crossed the U.S. border and was paroled into the United States in 2023. LeRoy Decl. ¶¶ 7, 13-15. Nothing had changed for Petitioner in August 2026—except Respondents' plan to violate the constitutional and statutory rights of noncitizens—and even federal court orders—to achieve the current administration's mass deportation goals.[6]

[6] *See* Nate Raymond, Kristina Cooke and Brad Heath, *Courts Have Ruled 4,400 Times That ICE Jailed People Illegally. It Hasn't Stopped*, REUTERS, February 14, 2026, https://www.reuters.com/legal/government/courts-have-ruled-4400-times-that-ice-jailed-people-illegally-it-hasnt-stopped-2026-02-14/; *see also*, Mattathias Schwartz, Zach Montague and Ernesto Londoño, *Judges Grow Angry Over Trump Administration Violating Their Orders*, N.Y. TIMES, Feb. 23, 2026, https://www.nytimes.com/2026/02/23/us/politics/judges-contempt-immigration-trump.html; Kyle Cheney, *'ICE Will Comply': Top Minnesota Judge Threatens Criminal Contempt For Continued Defiance,* POLITICO, Feb. 26, 2026 https://www.politico.com/news/2026/02/26/ice-minnesota-judge-criminal-contempt-00803285.

## FIRST CLAIM FOR RELIEF

**Violation of the Fifth Amendment to the United States Constitution**

**(Substantive Due Process—Detention)**

78. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

79. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See id*.

80. Petitioner was not a flight risk or a danger to the community when DHS agents first detained him in December 2023 since he was almost immediately released without conditions. LeRoy Decl. ¶¶ 6-7. Nothing has changed in the almost three years since then, and Petitioner is still not a flight risk or a danger to the community. Exh. D; LeRoy Decl. ¶¶ 13-14, 16. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

81. Moreover, Petitioner's detention is punitive as it bears no "reasonable

relation" to any legitimate government purpose. Here, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons"—namely, to meet DHS quotas. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

**<u>SECOND CLAIM FOR RELIEF</u>**

**Violation of the Fifth Amendment to the United States Constitution**

**(Procedural Due Process—Detention)**

82. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

83. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his release. See *Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); see also Ortega, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following release on bond).

84. Petitioner's re-detention was unlawful such that he should not be required to seek release on bond. The weight of controlling precedent from this Court, the Ninth Circuit, and the U.S. Supreme Court makes it abundantly clear that "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed." *Hasratyan* 2026 WL 288909, at *4

(ordering petitioner's immediate release on similar salient facts and legal issues) (emphasis added); *see also Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK (C.D. Cal. Mar. 16, 2026) (discussing *Hasratyan* and granting preliminary injunction, Dkt. No. 23 at 11, ordering the immediate release of a previously paroled asylum seeker, and requiring that "any future enforcement actions after release must comply with Due Process requirements of at least a pre-detention hearing before a neutral adjudicator.").

85. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127 (generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.") (emphasis added). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

86. Petitioner's arbitrary re-detention on August 7, 2026, without individualized notice or a pre-deprivation hearing, violated due process. After deciding to release Petitioner from custody in December 2023, Respondents re-

detained Petitioner almost three years later with no notice and no opportunity to contest the basis of his re-detention before a neutral adjudicator in advance. LeRoy Decl. ¶¶ 7, 11, 15.

87. Petitioner has a profound personal interest in his liberty. Because he received no procedural protections prior to his re-arrest on August 7, 2026, the risk of erroneous deprivation is high. The government had no legitimate interest in re-detaining Petitioner without demonstrating a material change of circumstances on or before the date of his re-arrest on August 7, 2026.

## THIRD CLAIM FOR RELIEF

### Violation of the Fourth Amendment to the United States Constitution (Unlawful Arrest)

88. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

89. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials.

90. As a corollary to that right, the Fourth Amendment prohibits government officials from conducting repeated arrests on the same probable cause. "It is axiomatic that seizures have purposes. When those purposes are spent, further seizure is unreasonable …. [T]he primary purpose of an arrest is to ensure the arrestee appears to answer charges…. Once the arrestee appears before the court, the purpose of the initial seizure has been accomplished. Further seizure requires a

court order or new cause; the original probable cause determination is no justification." *Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) (cleaned up); *see also United States v. Kordosky*, No. 88-CR-52-C, 1988 WL 238041, at *7 n.14 (W.D. Wis. Sept. 12, 1988) ("Absent some compelling justification, the repeated seizure of a person on the same probable cause cannot, by any standard, be regarded as reasonable under the Fourth Amendment.").

91. DHS agents released Petitioner from custody without bond on December 27, 2023. LeRoy Decl. ¶ 7. He had not engaged in any conduct in the intervening time – almost three years – that made him a flight risk or danger to the community. LeRoy Decl. ¶¶ 7, 13-15. No material change in circumstances justified Petitioner's re-detention on August 7, 2026. *See id.*

92. Petitioner's re-arrest and detention by Respondents without a warrant or reasonable suspicion that he violated any law and absent any material change in circumstances, constitute an unreasonable seizure in violation of the Fourth Amendment.

## FOURTH CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act

93. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

94. The APA prohibits federal action that is "in excess of statutory

jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id*. § 706(2)(A).

95. The government's quota-driven policy of re-arresting previously paroled asylum seekers with no changed circumstances is in excess of statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C). The government has provided no reasoned or adequate explanation for this policy which represents a dramatic shift from recent and longstanding agency policy and practice. Such policy is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).

96. Respondents' policy of re-detaining individuals such as Petitioner without an individualized explanation for the basis of their parole revocation and pre-deprivation notice violated the APA. *See Y-Z-H-L*, 2025 WL 1898025, at *10-12 (holding that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision and finding that the absence of such description resulted in a violation of the APA). Such policy is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).

97. Petitioner's arbitrary re-arrest and re-detention without individualized suspicion, cause, notice or a pre-deprivation hearing before a neutral arbiter constitute final agency actions that violate the APA. *See* 5 U.S.C. § 706(2).

## <u>FIFTH CLAIM FOR RELIEF</u>

**Violation of the Immigration and Nationality Act (INA)**

**8 U.S.C. § 1226**

98. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

99. Petitioner is subject to 8 U.S.C. § 1226(a).

100. Petitioner was re-detained without a warrant, notice or cause. Detention must serve a legitimate government purpose of mitigating danger or preventing flight. *See Zadvydas,* 533 U.S. at 690.

101. Petitioner's prior release by DHS in December 2023 necessarily reflects a determination that he is neither a flight risk nor a danger to the community. 8 C.F.R. 1236.1(c)(8) (outlining requirements for release); 8 C.F.R. 212.5(b) (outlining requirements for parole). Thus, his re-detention required an individualized determination of a material change in circumstances *on or before* August 7, 2026 going to flight risk or danger in order for his re-detention to serve a legitimate regulatory purpose. *See Y-Z-H-L v. Bostock*, 2025 WL 1898025, at *10–12 (D. Or. July 9, 2025).

102. Petitioner's re-detention commencing on August 7, 2026 violated the INA, given that he was not provided an individualized pre-deprivation notice of the basis for the revocation of his parole on August 7, 2026, no warrant was presented to him, DHS officials authorized by the implementing regulations of §

1226 to revoke his parole did not do so; it was arbitrarily revoked by unidentified ICE agents who refused to explain to him why he was being re-detained. LeRoy Decl. ¶¶ 11, 15

103. Moreover, there was no determination by a neutral arbiter of any material change in circumstances related to flight risk or danger to justify his re-detention required by 8 U.S.C. § 1226 and its implementing regulations as confirmed by DHS longstanding prior practice.

104. Petitioner's re-arrest and re-detention on August 7, 2026 required that a warrant of arrest be issued only by those immigration officers listed in 8 C.F.R. § 287.5(e)(2) and be served only by those immigration officers listed in 8 C.F.R. § 287.5(e)(3). No such warrant was issued or shown to Petitioner.

105. Petitioner's re-detention commencing on August 7, 2026, violated 8 U.S.C. § 1226(a) and its implementing regulations, given that he was not provided an individualized pre-deprivation notice of the basis for his re-detention on that date, nor a determination by a neutral arbiter of a material change in circumstances related to flight risk or danger to the community. LeRoy Decl. ¶¶ 11, 15. Thus, there has been no legal justification for his re-detention in violation of the INA, Section 1226.

## SIXTH CLAIM FOR RELIEF

**Violation of the Immigration and Nationality Act**

**(8 U.S.C. § 1357(a)(2))**

106. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

107. Respondents violated Petitioner's rights under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) prohibiting warrantless arrests without reason to believe an individual is a flight risk.

108. When re-arresting Petitioner on August 7, 2026, ICE did not show him any warrant or even suggest to him that there was suspicion that he had become a flight risk. LeRoy Decl. ¶¶ 11, 15.

109. Petitioner's re-arrest and re-detention by Respondents on August 7, 2026 without any reason to believe that he presented a flight risk and without a warrant violated the INA and its implementing regulations, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody under the terms of his prior release and return to him all items and documents confiscated by ICE at or around the time of the commencement of his unlawful re-detention;

3. Enjoin Respondents from re-arresting and re-detaining Petitioner in

violation of his constitutional rights and the INA and specifically, without an individualized pre-deprivation notice of the basis for revoking his release on parole, and a hearing before a neutral arbiter at which Respondents must prove by clear and convincing evidence of a material change of circumstances regarding Petitioner's flight risk or danger to others at the time of his re-arrest in accordance with 8 U.S.C. § 1226 and its implementing regulations;

4. Enjoin Respondents from placing any electronic monitoring devices, such as an ankle monitor, on Petitioner's person in violation of his constitutional rights without an individualized notice of the basis for such device and a hearing before a neutral arbiter at which Respondents must provide by clear and convincing evidence of a material change of circumstances regarding Petitioner's flight risk or danger requires such monitoring;

5. Declare that Petitioner's re-arrest and re-detention violated the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the Administrative Procedure Act and the Immigration and Nationality Act, 8 U.S.C. § 1226, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii);

6. Enjoin Respondents from transferring Petitioner outside this District or deporting Petitioner pending these proceedings;

7. Set aside Respondents' unlawful practices and policies pursuant to 5 U.S.C. § 706(2) as contrary to law, contrary to constitutional rights and in excess of statutory authority;

8. Award Petitioner his costs and reasonable attorneys' fees in this action pursuant to either (a) the Equal Access to Justice Act and 28 U.S.C. § 2412 or (b) the common law doctrine of bad faith; and

9. Grant such further relief as this Court deems just and proper.

Date: October 16, 2026

Respectfully submitted,

/s/ *Carrie LeRoy*

Carrie LeRoy
Pro Bono Attorney for Petitioner

**VERIFICATION**

I, Carrie LeRoy, declare as follows:

I am an attorney admitted to practice law in the State of California. Because many of the allegations of this Petition require legal knowledge not possessed by Petitioner, I am making this verification on his behalf.

I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 16, 2026.

/s/ *Carrie LeRoy*
Carrie LeRoy
Pro Bono Attorney for Petitioner